**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                          :
MARVIN KEITH,                             :
                                          :
                    Plaintiff,            :
          v.                              :        CIVIL ACTION NO. 06-424 (JLL)
                                          :
EITARO ITOYAMA, ET AL.,                   :
                                          :        **OPINION**
                    Defendants.           :
———————————————————:

APPEARANCES:

Richard D. Gaines, Esq.
Richard D. Gaines & Associates, P.C.
49 High Street
Newton, New Jersey 07860
    Attorneys for Plaintiff

Jonathan L. Swichar, Esq.
Steven M. Richman, Esq.
Duane Morris LLP
240 Princeton Avenue, Suite 150
Hamilton, New Jersey 08619
    Attorneys for Defendants Eitaro Itoyama;
    Kiyoshi Fujinami; Shinnihon U.S.A. Co, Ltd.;
    Shinnihon Kanko Co., Ltd.; Shinnihon Kanko
    Kogyo Co., Ltd.; Eugene Mulvihill; and
    Great Gorge Acquisitions, Inc.

Edward A. Stein, Esq.
2 University Plaza, Suite 202
Hackensack, New Jersey 07601
    Attorney for Defendant Colonial Bank, N.A.

Thomas J. Burns, III, Esq.
Reed Smith LLP
Princeton Forrestal Village
136 Main Street, Suite 250
P.O. Box 7839
Princeton, New Jersey 08543
    Attorneys for Defendant WSG Development Co.

Richard I. Clark, Esq.
Laddey, Clark & Ryan, LLP
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871

Gebhardt & Kiefer, P.C.
1318 Route 31
P.O. Box 4001
Clinton, New Jersey 08809
    Attorneys for Defendant the Vernon Township
    Zoning Board of Adjustment

**LINARES**, District Judge.

Plaintiff, Marvin Keith, filed the instant lawsuit against Defendants, Eitaro Itoyama; Kiyoshi Fujinami; Shinnihon U.S.A. Co., Ltd. ("Shinnihon"); Shinnihon Kanko Co., Ltd. ("Kanko"); Shinnihon Kanko Kogyo Co., Ltd. ("Kogyo");[1] Eugene Mulvihill; Great Gorge Acquisitions, Inc. ("Great Gorge"); the Vernon Township Zoning Board of Adjustment (the "Board");WSG Development Co. ("WSG"); and Colonial Bank, N.A. ("Colonial Bank") on January 30, 2006.

Currently pending before the Court are the following motions (1) motion for summary judgment pursuant to Fed. R. Civ. P. 56 and for an injunction filed by Itoyama, Fujinami, Shinnihon, Kanko, Kogyo (collectively, the "Shinnihon Defendants"), Mulvihill and Great Gorge (the "Mulvihill Defendants"); (2) motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) filed by the Board; (3) motion to dismiss pursuant to Rules 12(b)(1) and (b)(6) and for an injunction filed by WSG; (4) motion to dismiss pursuant to Rule 12(b)(6) and for an injunction

---

[1]  It is unclear whether Kogyo is properly a defendant in this case.  Plaintiff claims that Kogyo is an affiliate of Kanko and Shinnihon.  There is no indication on the docket that Kogyo was explicitly named as a defendant; however, Kogyo is listed as a movant in the pending motions.  The Court will accordingly consider Kogyo's arguments in support of summary judgment.

Further, the Court notes that according to the Shinnihon Defendants, on October 22, 2003, the corporate name of "Shinnihon Kanko Kogyo Co.,  Ltd." was changed and the "Kogyo" was deleted.  See Richman Declaration (Apr. 21, 2006) at ¶¶ 13-14.  Thus, "Shinnihon Kanko Kogyo Co., Ltd." apparently became "Shinnihon Kanko Co., Ltd."  See id.  This is confusing to the Court because the new name of "Kogyo" is apparently the same as full name of "Kanko."  It appears that the foreign registration of Kanko was withdrawn by dissolution on August 24, 1999. See N.J. State Business Gateway Service, Business Entity Status Report (Mar. 30, 2006).  In any event, the Court need not resolve this confusion.  To the extent that Kogyo is a separate entity that was named by Plaintiff in this case, the claims against Kogyo are dismissed for the reasons stated in this opinion.

filed by Colonial Bank; and (5) motions for sanctions filed by all Defendants.

The Court hereby converts the motions to dismiss filed by the Board, WSG, and Colonial Bank into motions for summary judgment pursuant to Rule 56.[2]  See Rycoline Products, Inc. v. C&W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (indicating that court may resolve a Rule 12(b)(6) motion on res judicata and Entire Controversy Doctrine grounds only where such is apparent on the face of the complaint); see also Brody v. Hankin, No. 04-1376, 145 Fed. Appx.

---

[2]  Plaintiff was put on adequate notice that the Court might convert the motions to dismiss filed by the Board, WSG, and Colonial Bank into motions for summary judgment. First, although the Board, WSG, and Colonial Bank styled their motions as motions to dismiss, the Shinnihon and Mulvihill Defendants brought their motion, which dealt with essentially the same issues, as a motion for summary judgment under Rule 56.

Further, Plaintiff clearly interpreted all filed motions as motions for summary judgment. He phrased his opposition brief as a "Memorandum of Law in Opposition to the Defendants' Motions for Summary Judgment" and referred to the pending motions filed by the Board, WSG, and Colonial Bank as motions for summary judgment in his brief.  See Plaintiff's Brief (May 6, 2006) at p. 1.

Additionally, Plaintiff attached an affidavit and exhibits to this opposition brief for the Court's consideration.  Thus, Plaintiff was not only on adequate notice of the Court's conversion of the above-referenced motions to dismiss into summary judgment motions, but he in fact treated those motions as such.  See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996) (holding that plaintiff had adequate notice of conversion of motion to dismiss into motion for summary judgment where two of five motions to dismiss were framed in the alternative as motions for summary judgment and plaintiff submitted his own affidavits to the court); see also McDaniels v. New Jersey, 144 Fed. Appx. 213, 2005 WL 730565, at *2 (3d Cir. Mar. 31, 2005) (holding that plaintiff had adequate notice of conversion where motion to dismiss was framed in the alternative as motion for summary judgment and plaintiff responded to motion by mentioning summary judgment in body of his memorandum).

To the extent that Defendants argue that this matter should be dismissed for lack of subject matter under the Rooker-Feldman doctrine, such motion is properly brought under Fed. R. Civ. P. 12(b)(1) and will be considered under this standard.  See, e.g., Ninal v. Evangelista, No. 04-5718, 2005 WL 2710742, at *3 (D.N.J. Oct. 21, 2005); see also Hanover Group, Inc. v. Manufactured Home Communities Inc., No. IP00-0739-C-T/G, 2000 WL 1124877, at *2 (S.D. Ind. Jul. 12, 2000) ("A Rooker-Feldman defense should be presented through a motion to dismiss pursuant to Rule 12(b)(1).").

768, 2005 WL 2077180, at *4 (3d Cir. Aug. 29, 2005) ("While a district court may dismiss a

claim on res judicata grounds on a Rule 12(b)(6) motion . . . those grounds must be evident on

the face of the complaint.").

The Court has reviewed the parties' submissions.[3]  For the following reasons, the Court

grants the pending motions for summary judgment and denies Defendants' requests for further

relief.[4]

## I.    <u>Factual History</u>[5]

The factual history of this case has been regurgitated numerous times by several courts

---

[3]  On May 22, 2006, Plaintiff attempted to file a sur-reply brief, without the Court's
permission, in support of his opposition to the instant motions.  Defendants objected to this
filing.  Plaintiff's sur-reply is prohibited by Local Civil Rule 7.1(d)(6) which states, "[n]o sur-
replies are permitted without permission of the Judge or Magistrate Judge to whom the case is
assigned."  <u>See</u> L. Civ. R. 7.1(d)(6).  Although the Court need not consider Plaintiff's sur-reply,
the Court will do so in this matter because it is apparent that although this brief contains
essentially the same arguments as Plaintiff's opposition brief, Plaintiff makes certain admissions
in this brief that are detrimental to his case.

In this sur-reply letter, Plaintiff offers to dismiss his claims against the Board, Colonial
Bank, and WSG without prejudice.  The Court refuses to allow Plaintiff to do so because such
would only prolong the inevitable conclusion in this matter that Plaintiff's claims are barred by
the doctrines of *collateral estoppel*, *res judicata*, and the Entire Controversy Doctrine.

[4]  The Court decides the instant matter without oral argument pursuant to Fed. R. Civ. P.
78.  The Court's jurisdiction over this matter is not challenged at this juncture and is premised on
28 U.S.C. § 1331 and 28 U.S.C. § 1332.  Plaintiff has asserted a federal claim pursuant to 42
U.S.C. § 1983.  Further, Plaintiff, a citizen of Rhode Island, is diverse from the citizenship of all
Defendants and he claims in excess of $75,000.00 in damages.

[5]  This factual history contains undisputed facts.  To the extent any of these facts are
disputed, the Court construes the facts in the light most favorable to the Plaintiff for purposes of
deciding the instant motions.  <u>See, e.g.</u>, <u>Davis v. Twp. of Hillside</u>, 190 F.3d 167, 170 (3d Cir.
1999) (viewing disputed facts in light most favorable to non-moving party in adjudicating
summary judgment motion).

and thus, will not be discussed in depth in this opinion.  The Court will conduct a brief examination of the relevant facts below.

The dispute which gave rise to this litigation, as well as various other lawsuits pending in New Jersey state and federal court, centers upon the issue of ownership of Metairie Corporation ("Metairie") and Spring Creek Holding Co., Inc. ("Spring Creek").

Plaintiff was the sole owner of both Metairie and Spring Creek.   Beginning in May 1998, Plaintiff utilized both entities in an attempt to obtain ownership of a parcel of real estate known as the Legends Resort and Country Club (the "Legends Resort") in Vernon, New Jersey.  The Legends Resort consisted of three properties, namely, a hotel, a golf course surrounding the property (the "Golf Course"), and an undeveloped parcel of land adjacent to the Golf Course (the "Remainder Land").

Metairie, at Plaintiff's direction, purchased the hotel property on which Plaintiff sought to construct timeshare units for sale.

Spring Creek entered into an agreement with Shinnihon in August 2000 with regard to the Golf Course and Remainder Land properties, which were owned by Shinnihon.  Defendant Itoyama is the Chairman and Chief Executive Officer of Kanko, the parent company of wholly-owned subsidiary Shinnihon.  Defendant Fujinami is the Managing Director of Shinnihon.

Pursuant to the agreement between Shinnihon and Spring Creek, Spring Creek obtained the right of first refusal with respect to Shinnihon's sale of the Golf Course.  Further, Spring Creek obtained the contractual right to purchase, subject to certain conditions, the Remainder Land from Shinnihon.  One of those conditions was that Spring Creek work with Shinnihon to obtain certain site approvals from the Board.  The Board is responsible for deciding zoning

requests and granting variances in Vernon Township.  The site plans before the Board involved the building of almost 700 townhouses to be sold as timeshare units.  The Board ultimately approved these preliminary site plans, as well as a modified version of these preliminary site plans adding the construction of a nine-hole golf course on the property.

Hillel Meyers and Seymour Svirsky provided Plaintiff with certain financing to aid him in constructing his timeshare units on the property at the Legends Resort.  Part of this financing was purportedly obtained by Svirsky and Meyers from a loan from Colonial Bank to a company co-owned by Svirsky and Meyers, Rachel Associates Corporation.  In return for providing this financing, Plaintiff agreed to give Meyers and Svirsky each a one-third interest in Metairie and Spring Creek.  This change in control took effect in approximately January 2000.  Plaintiff claims that Colonial Bank knew that Svirsky and Meyers did not intend to meet their financing obligations to Plaintiff.

Relations between the three owners of Metairie and Spring Creek soon turned sour. Plaintiff alleges that Svirsky and Meyers failed to meet their financing obligations. Consequently, Plaintiff and Svirsky and Meyers became entangled in a dispute over who had control over Metairie and Spring Creek and who had the authority to act on behalf of these companies.

In July 2001, Svirsky and Meyers, acting on behalf of Spring Creek, entered into an agreement with Pulte Communities ("Pulte"), whereby Spring Creek agreed to transfer its interest in the Remainder Land to Pulte once Spring Creek obtained legal title to the Remainder Land from Shinnihon.  Pulte entered this agreement on the condition that the site plans be altered so that Pulte could develop condos, as opposed to timeshare townhouses.

7

Accordingly, Svirsky and Meyers, in conjunction with Shinnihon, attempted to obtain final approval of site plans from the Board for development of the Remainder Land that materially differed from the plans Plaintiff first proposed.  This modification involved a change in the number and type of units to be built on the property from approximately 700 timeshare townhouses to approximately 400 condominiums.  It appears that this modification also removed from consideration the previous plan to construct a nine hole golf course on the property.   At some point thereafter, Pulte ceased interest in acquiring the Remainder Land from Spring Creek.

According to Plaintiff, Svirsky's and Meyers's actions were improper because Plaintiff was not consulted or given an opportunity to challenge these proposed modified plans.  Plaintiff specifically contends that he gave the Board notice that Svirsky and Meyers were not authorized to act for Spring Creek and that the Board failed to give Plaintiff notice of meetings and proposed actions regarding the subject property.  Instead of communicating with Plaintiff, the Board purportedly engaged in private negotiations with Svirsky and Meyers, acting on behalf of Spring Creek.

With respect to Shinnihon, Plaintiff claims that Shinnihon was aware that Svirsky and Meyers had no authority to act on behalf of Spring Creek.  He claims that Shinnihon could have kept dealing with Plaintiff, and sought Board approval of the preliminary site plans involving the townhouses, thus avoiding involvement in Plaintiff's dispute with Svirsky and Meyers.  Instead, Plaintiff claims that Shinnihon was engaged in a fraudulent plan to retain control of the Remainder Land and the Golf Course for itself and thus, avoid Spring Creek's right of first refusal with respect to the Golf Course.   In this regard, Plaintiff alleges that Shinnihon aided Svirsky and Meyers in their efforts to obtain final approval of the modified plans because

8

Shinnihon knew that due to the modification from the original plans, the Board was unlikely to approve such modified plans, purportedly leaving Shinnihon free to terminate its agreement with Spring Creek.

After Pulte ceased interest in acquiring the Remainder Land, Plaintiff claims that Svirsky and Meyers, acting on behalf of Metairie and Spring Creek, entered into an agreement with WSG, a real estate development company, whereby WSG was to acquire all of Metairie's assets and Spring Creek's interest in the Remainder Land.   A condition of this agreement, according to Plaintiff, was that the parties pursue the final approval of the modified site plans as pursued by Pulte.  Plaintiff asserts that WSG directed and/or funded the efforts of Shinnihon and Svirsky and Meyers to obtain approval from the Board of the modified site plans.

Plaintiff also claims that Mulvihill formed Great Gorge to acquire the Golf Course property from Shinnihon.  This purchase was to be affected by Great Gorge purchasing all of Shinnihon's capital stock, since the Golf Course represented substantially all of Shinnihon's assets.  Plaintiff claims that Mulvihill and Great Gorge knew that Spring Creek had the right of first refusal on a purchase of the Golf Course from Shinnihon and ignored such right.  He further claims that Mulvihill and Great Gorge knew that only Plaintiff (and not Svirsky and Meyers) had the authority to act on behalf of Spring Creek and that Plaintiff wished to exercise his right to purchase the Golf Course.

Sometime thereafter, Svirsky and Meyers offered to sell all of Metairie's assets and Spring Creek's interest in the Remainder Land to Plaintiff and "specified others" who "matched or bettered the deal that Svirsky had with an undisclosed entity."  It is unclear from the submissions whether this entity was WSG or something else.  In any event, Plaintiff formed

Brazos Equities LLC ("Brazos" ) in an attempt to acquire these assets.  Plaintiff claims that he

accepted this offer and was ready to close the transaction, but Svirsky and Meyers refused to do

so.

On August 15, 2005, the Board denied Spring Creek's and Shinnihon's application for

approval of the site plans as modified to change the proposal from approximately 700 timeshare

townhouses plus a nine-hold golf course to approximately 400 condominiums without a golf

course.  This decision was memorialized in Resolution No. 15 issued on October 5, 2005.

## II.     Various State and Federal Court Litigations

The above chain of events spurned numerous lawsuits in both state and federal court in

New Jersey.  The tortured history of these lawsuits has been compared to "the shore arcade game

'Whack the Mole' in which every time you hammer down one plastic mole, another pops up

endlessly," see Shinnihon and Mulvihill Defendants' Letter (May 23, 2006) at p. 3, and the

movie "Groundhog Day" where "each day Bill Murray woke up and it was February 2nd all over

again and he had to relive it," see Transcript (SSX-L-040-05) (March 17, 2006) at 80:1-16.

Below is a summary of the relevant lawsuits.[6]

## A.     The District of New Jersey "First Federal Action"

First, Svirsky and Meyers, individually and on behalf of Spring Creek, filed suit against

Plaintiff on January 29, 2002 in the District of New Jersey (02-CV-376) which was previously

pending before the undersigned, but is currently assigned to the Honorable Peter G. Sheridan.

The magistrate judge on this case is the Honorable Ronald J. Hedges.  This lawsuit is referred to

---

[6]  It is apparent from reading the parties' submissions that there were various other
lawsuits filed relating to claims with respect to the Legends Resort.  The Court only discusses the
three previously-filed lawsuits which are relevant to the disposition of the instant motions.

herein as the First Federal Action.

Svirsky and Meyers sought to enjoin Plaintiff from taking unauthorized actions on behalf of Spring Creek and to recover monies that Plaintiff purportedly owed to Spring Creek and/or Svirsky and Meyers.  Plaintiff filed counterclaims against Svirsky and Meyers.  Plaintiff later amended his third-party complaint to include a claim against Shinnihon for a preliminary injunction to enjoin Shinnihon from making any transfer of the Remainder Land.  The Court dismissed Plaintiff's claims against Shinnihon on September 26, 2005 for lack of timely service under Rule 4(m) and failure to state a cause of action for injunctive relief under Rule 12(b)(6).

Plaintiff sought to add claims against Itoyama, Fujinami, Kanko, Kogyo, Mulvihill, Great Gorge, the Board, WSG, and Colonial Bank on or about November 14, 2005.  Judge Hedges, by order dated January 11, 2006, refused to allow Plaintiff to amend his third-party complaint in this fashion, finding that Plaintiff had already amended his complaint numerous times and that the new motion to amend was a consequence of Plaintiff's dilatory actions.   Judge Hedges also imposed Rule 11 sanctions upon Plaintiff for filing notices of *lis pendens* with the Court in bad faith.  The undersigned affirmed Judge Hedges's decision on appeal on September 18, 2006.

The Court also found, on December 27, 2004, that neither Plaintiff nor Brazos had a contract with Svirsky and Meyers to purchase the assets of Metairie and Spring Creek.   Thus, Plaintiff and Brazos had no claim against these individuals for breach of contract or tortious interference with a contract.

In October 2006, the claims remaining in this action went to trial before Judge Sheridan. A jury was empaneled to determine whether Plaintiff, or Svirsky and Meyers, controlled Metairie and Spring Creek and had the authority to act on behalf of these companies.  The jury also was

asked to determine whether it was Plaintiff or Svirsky and Meyers who breached fiduciary duties to Metairie and Spring Creek and interfered with the operations of Spring Creek.

After hearing the testimony and arguments made at trial, on October 16, 2006, the jury determined that Svirsky and Meyers were the controlling shareholders in Metairie and Spring Creek. Thus, contrary to Plaintiff's repeated assertions, which underlie his claims in all of these pending lawsuits, Plaintiff is not the sole owner of Metairie and Spring Creek. The jury further found that Plaintiff breached his fiduciary duties to the companies and interfered with the contractual relations and prospective economic advantage of Spring Creek. An appropriate judgment was entered on October 18, 2006. A trial on damages is forthcoming.

**B.      The Superior Court of New Jersey "Spring Creek Action"**

Spring Creek, through Svirsky and Meyers, filed suit against Shinnihon in the Superior Court of New Jersey, Chancery Division, Sussex County (SSX-C-43-03), on or about September 30, 2003. This matter will be referred to as the "Spring Creek Action." Spring Creek claimed that Shinnihon breached its agreement with Spring Creek relating to Spring Creek's right to purchase the Remainder Land. Shinnihon filed a counterclaim against Spring Creek arguing that its contract with Spring Creek should be terminated due to the uncertainty surrounding the ownership of Spring Creek. In this regard, Shinnihon claimed that it sought adequate assurances of performance from Spring Creek due to the aforementioned ownership struggles and that Spring Creek failed to provide such assurances.

Plaintiff sought to intervene in this dispute. On July 10, 2004, the Honorable Kenneth C. MacKenzie refused to allow Plaintiff to intervene, stating that his claims were essentially Spring Creek's claims, which were already being pursued by the company. The Appellate Division

12

affirmed Judge MacKenzie's decision.  See Spring Creek Holding Co., Inc., v. Shinnihon U.S.A. Co., Ltd., No. C-43-03, 2005 WL 3357492 (N. J. Super. Ct. App. Div. Dec. 12, 2005).  In so holding, the Appellate Division found that Plaintiff was trying to assert claims regarding Spring Creek's interest in the Remainder Land and Golf Course that Spring Creek had already asserted itself.  See id. at *2-3.  Thus, Plaintiff could not show that his interests were not being adequately represented by the existing parties.  See id.

Judge MacKenzie, in adjudicating the substantive issues in this case, agreed with Shinnihon, holding that the contract between Spring Creek and Shinnihon was terminated effective June 30, 2003.  See Order Granting Summary Judgment  (SSX-C-43-03) (Oct. 26, 2005) at p. 2; Opinion Granting Summary Judgment (SSX-C-43-03) (Oct. 26, 2005) at p. 10. Accordingly, Spring Creek had no right to purchase the Remainder Land from Shinnihon and no right of first refusal with respect to purchasing the Golf Course.   Spring Creek's claims were thus dismissed with prejudice.  See Order Granting Summary Judgment (SSX-C-43-03) (Oct. 26, 2005) at p. 2.  Any outstanding issues in this litigation appear to have been resolved by consent order executed by the parties and Judge MacKenzie on March 29, 2006.

## C.      The Superior Court of New Jersey "Sussex Action"

Plaintiff filed an action on behalf of himself and his entity Brazos in the Superior Court of New Jersey, Law Division, Sussex County (SSX-L-040-05), on or about February 14, 2005.  This action is referred to as the "Sussex Action."  Plaintiff initiated this lawsuit by way of an order to show cause seeking to enjoin the Board from hearing an application by Svirsky and Meyers, on behalf of Spring Creek, and Shinnihon to modify and/or extend certain land use approvals.  The Honorable William J. McGovern denied Plaintiff's request for injunctive relief on February 17,

2005.[7]

In this lawsuit, Plaintiff named the Board, WSG, Shinnihon, Spring Creek, and Colonial Bank as defendants.  Plaintiff also named unspecified "John Does" and "Richard Roes."  Plaintiff specifies that the John Doe individuals include "principals and officers of Shinnihon."  See Third Amended Complaint (SSX-L-040-05) (Dec. 12, 2005) at ¶¶ 144-45.[8]  The Richard Roes are individuals who were purportedly participating in Shinnihon's efforts to cooperate with Svirsky and Meyers and thus, interfered with Plaintiff's control rights over Metairie and Spring Creek. See id. at ¶¶ 141-45.  The allegations which form the basis of the operative complaint in this lawsuit are virtually identical to those in the instant case.  Plaintiff sets forth the following causes of action in this complaint:

 (1) violation of 42 U.S.C. § 1983 by the Board (Count I);

---

[7]  Judge McGovern entered an order on October 21, 2005, consolidating certain of the state court lawsuits filed with respect to the properties at issue.  See Order (SSX-L-040-05) (Oct. 21, 2005) at p. 5.  In this order, Judge McGovern also declared that "all said parties are enjoined from filing any new lawsuits in this or any other state without first obtaining permission from the court."  See id.  Defendants argue that Plaintiff violated Judge McGovern's bar order by filing the instant lawsuit and thus, this case should be dismissed.  The Court declines to dismiss Plaintiff's lawsuit or impose sanctions upon Plaintiff on this basis.  First, a review of Judge McGovern's order indicates that Plaintiff's lawsuit, captioned at SSX-L-040-05, was not one of the cases consolidated by Judge McGovern in his October 21, 2005 order.  While it appears that Judge McGovern's bar order applies to Plaintiff, such is not abundantly clear from the document.  Further, Judge McGovern's order is ambiguous in that it did not explicitly prohibit such filing in federal court.  Accordingly, while the Court understands Defendants' frustration in this regard, the Court will not rest its holding on the prohibitions set forth in Judge McGovern's order.

[8]  Although Judge Farber dismissed Plaintiff's claims against the defendants in the Sussex Action presumably using Plaintiff's December 12, 2005 Third Amended Complaint as the operative complaint, Defendants contend that this complaint violates Judge Farber's December 2, 2005 order, prohibiting Plaintiff from making certain amendments.  The Court need not decide whether Plaintiff's December 12, 2005 Third Amended Complaint violated Judge Farber's order because Judge Farber apparently allowed this complaint to proceed in issuing his decision granting summary judgment in favor of the defendants.

(2)      violation of the New Jersey Open Public Meetings Act, N.J.S.A. § 10:4-6 et seq. by the Board (Count II);

(3)      violation of the New Jersey Municipal Land Use Law, N.J.S.A. § 40:55D-1 et seq. by the Board (Count III);

(4)      fraud against Colonial Bank, WSG, and Spring Creek for assisting Svirsky and Meyers in their purportedly unlawful actions (Count IV);[9]

(5)      interference with Plaintiff's and Brazos's contractual rights against Colonial Bank, WSG, and Spring Creek (Count V);

(6)      fraud against Shinnihon for assisting Svirsky and Meyers in their purportedly unlawful actions (Count VI);

(7)      interference with Plaintiff's control and contractual rights against Shinnihon, John Does, and Richard Roes (Count VII).

For relief, Plaintiff sought damages, attorneys' fees, and costs, as well as injunctive relief in the nature of:

(1)      requiring the Board to extend the existing site approvals (as proposed and modified by Plaintiff) pending final resolution of Plaintiff's and Brazos's claims of exclusive ownership of Metairie and Spring Creek and their purported right to perform Spring Creek's agreement with Shinnihon and control development of the Remainder Land;

(2)      enjoining WSG, Spring Creek, Colonial Bank, and John Does 1-100 from prosecuting the proposed modification to the existing site approvals, other than as contemplated Spring Creek's agreement with Shinnihon and from implementing or asserting their rights and obligations under the WSG's purported agreement with Metairie and Spring Creek;

(3)      enjoining Shinnihon from participating in any effort by any of the other defendants to seek final site approvals that substantially differ or modify the existing site approvals, other than as contemplated in Spring Creek's agreement with Shinnihon, without the express approval of Plaintiff and Noramco.[10]

---

[9]  The exact cause of action Plaintiff alleges against these defendants is unclear. The tenor of Plaintiff's allegations in Count IV of his Third Amended Complaint in the Sussex Action is that these defendants participated in Svirsky's and Meyers's scheme to defraud Plaintiff of his rights and interests in Metairie and Spring Creek. Thus, for purposes of resolving the instant motions, the Court characterizes Plaintiff's allegations as a fraud claim. For the same reasons, the Court also construes Plaintiffs claim against Shinnihon in Count VI as a fraud claim.

[10]  Noramco, Ltd. ("Noramco") was a holder of a $9 million note payable from Metairie's sale of timeshare units at the Legends Resort. This debt was later restructured and reduced to $3

The Honorable James A. Farber granted summary judgment in favor of the Board, WSG, Colonial Bank, and Shinnihon on March 17, 2006.   Judge Farber emphasized in his order dismissing the case that "the complaint in this matter, and all amendments thereto, are dismissed in their entirety against *all parties with prejudice*."  See Order Granting Summary Judgment (SSX-L-040-05) (Mar. 17, 2006) at p. 1.  In dismissing Plaintiff's claims against all defendants *with prejudice*, Judge Farber specifically found the following with respect to each defendant:

### 1.      The Board

Judge Farber found that Plaintiff's 42 U.S.C. § 1983 claim against the Board failed on a number of levels, after examining all of the possible constitutional violations supporting such a claim.[11]  First, the court found that Plaintiff's substantive due process claim was legally deficient because mere zoning denial does not rise to the level of conscience-shocking behavior.  See Transcript (SSX-L-040-05) (Mar. 17, 2006) at 65:12 - 67:17.  The Court further found that the Board did not violate Plaintiff's procedural due process rights because Plaintiff was on notice of the Board's proceedings and had a full opportunity to pursue his rights.  See id. at 68:8 - 71:11.  Judge Farber also indicated that Plaintiff failed to substantiate an equal protection claim against the Board because he did not show that he received different treatment from others similarly situated.  See id. at 71:12-23.  Lastly, the court found that Plaintiff did not establish a claim under

---

million.  As an inducement to accept this debt restructuring , Noramco acquired certain rights with respect to the Remainder Land.  In particular, Spring Creek could not transfer any interest in the Remainder Land or modify the preliminary site approvals without the express written approval of Noramco.  Noramco is not a party to this case.

[11]  It appears that Judge Farber also indicted that Plaintiff's section 1983 claim may have been time-barred, see Transcript (SSX-L-040-05) (Mar. 17, 2006) at 64:14-65:11, however, he reached the substance of this claim.

the Takings Clause because no taking occurred.  See id. at 71:24 - 74:22.

In his March 17, 2006 decision, Judge Farber also dismissed Plaintiff's New Jersey statutory claims against the Board.  First, with respect to Plaintiff's claimed violation of the New Jersey Open Public Meetings Act, N.J.S.A. § 10:4-6 et seq., the Court found that Plaintiff never requested to receive a list of the Board's scheduled meetings, and that Plaintiff provided no evidence that the Board engaged in private negotiations with Svirsky and Meyers.  See Transcript (SSX-L-040-05) (Mar. 17, 2006) at 74:23 - 76:6.  Further, the court found that this claim was moot because the Board denied Spring Creek's application, submitted by Svirsky and Meyers, to extend the modified site approvals.  See id. at 76:4-6.

With respect to Plaintiff's claim under the New Jersey Municipal Land Use Law, N.J.S.A. § 40:55D-1 et seq., the court stated that "it's hard to even figure out what exactly is being charged."  See id. at 76:9-10.  To the extent that Plaintiff was asserting that the Board violated this statute by cooperating with Svirsky and Meyers, the court found that the Board was not obligated to determine the identify of the owners of a particular applicant.  See id. at 76:7-17.

### 2.    Colonial Bank

Judge Farber noted that Colonial Bank's misdeeds are based on the improprieties of Svirsky and Meyers.  Thus, initially, the court found that the Entire Controversy Doctrine required that Plaintiff bring his claims against Colonial Bank in the First Federal Action.  See id. at 76:18 - 77:5.  Judge Farber further found that to the extent that Svirsky and Meyers were engaged in any fraud, there was no evidence that Colonial Bank knew of this fraud when it loaned money to these individuals through their jointly-owned company, Rachel Associates Corporation.  See id. at 77:13-17.

### 3.    WSG

The court granted summary judgment in favor of WSG as to all of Plaintiff's claims against it.  Judge Farber first found that Plaintiff has no contract with WSG, or for that matter, Shinnihon; Spring Creek has no contract with Shinnihon based on Judge MacKenzie's ruling; and Brazos has no contract with Svirsky and Meyers based on the undersigned's ruling.  See id. at 77:18-23, 78:12 - 79:4.  Thus, without an underling contract, it is impossible for WSG to have breached a contract with Plaintiff or to have interfered with Plaintiff's contractual rights.  See id. at 77:24-25.  Further, the court found that Plaintiff failed to show that WSG had any agreement at all with Svirsky and Meyers or that WSG was involved in zoning or planning activities.  See id. at 78:1-20.  Judge Farber also stated that there is no evidence that WSG acted with the requisite malice to justify liability for tortious interference with Plaintiff's rights.  See id. at 79:5-11.

### 4.    Shinnihon

With respect to Plaintiff's claims against Shinnihon, such claims were barred by the Entire Controversy Doctrine and were substantively deficient.  First, Judge Farber found that Plaintiff's claims against Shinnihon, which appear to be claims for fraud and interference with Plaintiff's contractual and control rights, were barred by the Entire Controversy Doctrine because Plaintiff, who was on notice of these claims since at least November 2001, should have brought such claims in the First Federal Action.  See id. at 60:4 - 62:9.  Further, the court indicated that Plaintiff has no contract with Shinnihon and, based on Judge MacKenzie's ruling, Spring Creek has no contract with Shinnihon.  See id. at 62:14 - 63:3.  Judge Farber also stated that Plaintiff set forth *no evidence* of a specific intent to interfere with Plaintiff's rights by Shinnihon.  See id. at 63:4-15.  In addition, Judge Farber found that Plaintiff's request for injunctive relief against

Shinnihon was moot because the Board had denied the application and no new application was

pending.  See id. at 62:10-13.

Accordingly, all claims against these defendants were dismissed with prejudice.  Judge

Farber denied Plaintiff's motion for reconsideration of his decision on May 12, 2006.

**D.      The Instant Action before this Court**

On or about January 30, 2006, approximately two weeks after Judge Hedges denied

Plaintiff's request to amend his complaint to name the proposed parties identified above in the

First Federal Action, and shortly after some defendants in the Sussex Action filed for summary

judgment, Plaintiff brought the instant lawsuit in this Court.  Plaintiff sets forth the following

causes of action in his complaint:

(1)      breach of contract against the Shinnihon Defendants and tortious interference with
         Plaintiff's control and contractual rights against the Shinnihon Defendants and the
         Mulvihill Defendants (Count I);

(2)      injunctive relief seeking to enjoin Shinnihon from transferring all of its capital
         stock to Great Gorge in violation of Plaintiff's right to exercise Spring Creek's
         right of first refusal as to the Golf Course (Count II);

(3)      fraud against Colonial Bank and WSG (Count III);[12]

(4)      violation of 42 U.S.C. § 1983 by the Board (Count IV);

(5)      violation of the New Jersey Open Public Meetings Act, N.J.S.A. § 10:4-6 et seq.
         by the Board (Count V); and

(6)      violation of the New Jersey Municipal Land Use Law, N.J.S.A. § 40:55D-1 et seq.
         (Count VI).

For relief, Plaintiff seeks damages, attorneys fees, costs, as well as injunctive relief in the

nature of:

---

[12]  Although the exact cause of action pled in Count III is unclear, for the reasons
discussed at supra note 9, the Court construes this count as a fraud claim for the purposes of
deciding these motions.

(1)     enjoining Shinnihon from (a) dealing with Svirsky and Meyers with respect to the issues previously discussed; (b) consummating any sale of the Golf Course until Spring Creek, under Plaintiff's authority, has an opportunity to exercise its right of first refusal; and (c) transferring any interest in the Remainder Land or Golf Course until Plaintiff's rights are determined;

(2)     requiring Shinnihon to (a) provide Plaintiff with copies of any offers to purchase the Golf Course which would trigger Spring Creek's right of first refusal; and (b) convey the Remainder Land and Golf Course to Spring Creek or Brazos as Plaintiff shall designate in accordance with the terms of Spring Creek's agreement with Shinnihon and right of first refusal;

(3)     enjoining Mulvihill/Great Gorge from (a) transferring any interest in the Remainder Land or Golf Course until Plaintiff's rights are determined; and (b) purporting to exercise any authority over the Golf Course and the Remainder Land; and

(4)     requiring the Board to (a) extend the preliminary site approvals, submitted prior to Svirsky's and Meyers's involvement, pending a final determination on Plaintiff's claims; and (b) permit submission of final zoning approvals based on such plans.

Plaintiff also asks the Court for a declaratory judgment that:

(1)     he is the sole owner, director, and officer of Metairie and Spring Creek;

(2)     Svirsky and Meyers have no interest in Metairie and Spring Creek and thus, lack authority to act on behalf of these companies; and

(3)     any person dealing with Svirsky and Meyers, acting on behalf of Metairie and Spring Creek, did so at their peril and any actions taken at Svirsky's and Meyers's direction with respect to Metairie and Spring Creek are voidable by Plaintiff.

## III.   Legal Discussion

## A.   Standards of Review

### 1.   Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) provides for dismissal of an action based on lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  When the existence of subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden to show that the court has the requisite jurisdiction to hear the case.  See, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005); Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

1977).  In adjudicating such a Rule 12(b)(1) motion, the court may not presume that the

plaintiff's allegations are true, but instead, must conduct an evaluation of the merits of the

jurisdictional claims.  See, e.g., Hedges, 404 F.3d at 750; Mortensen, 549 F.2d at 891.

### 2.     Fed. R. Civ. P. 56

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

substantive law identifies which facts are critical or "material."  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial.  Id.

at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Thus, the non-

moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex,

477 U.S. at 324.

The Court must consider all facts and their logical inferences in the light most favorable

to the non-moving party.  Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d

Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but

need determine only whether a genuine issue necessitates a trial.  Anderson, 477 U.S. at 249.  If

21

the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  Big Apple BMW v. BMW of North America, 974 F.2d 1358, 1363 (3d Cir. 1992).

## B.     The Rooker-Feldman Doctrine

Defendants first argue that the Court lacks subject matter jurisdiction over this matter pursuant to the Rooker-Feldman doctrine.  This doctrine derives from the principle that only the United States Supreme Court, not the lower federal courts, have jurisdiction to review a state court decision.  See, e.g., Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000).  Although the Rooker-Feldman doctrine has been broadly applied by courts, the Supreme Court made clear in Exxon Mobile Corp. v. Saudi Basic Indus. Corp., that the doctrine is limited to cases similar to those in which the doctrine got its name, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84, 291-92 (2005); see also Turner v. Crawford Square Apartments, III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (discussing the holding in Exxon Mobile).

Thus, the Supreme Court in Exxon Mobile declared that the Rooker-Feldman doctrine was limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  See, e.g., Exxon Mobile, 544 U.S. at 284; Turner, 449 F.3d at 547.  In so holding, the Court emphasized that the doctrine "does not override or supplant preclusion doctrine."  See Exxon Mobile, 544 U.S. at 284.  "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state

22

court." See id. at 292.  Instead, once the state court action is complete, "disposition of the federal

action . . . would be governed by preclusion law."  See id. at 293.  Accordingly, the Court stated:

> In parallel litigation, a federal court may be bound to recognize the claim-and issue-
> preclusive effects of a state-court judgment, but federal jurisdiction over an action does
> not terminate automatically on the entry of judgment in the state court.

See id.; see also Turner, 449 F.3d at 547 ("a district court is not divested of subject-matter

jurisdiction simply because a party attempts to litigate in federal court a matter previously

litigated in state court"); Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 329 (3d Cir.

2000) (stating that while the Rooker-Feldman doctrine and preclusion principles "may overlap

and even be blurred, they are not coextensive").

   The Supreme Court recently re-emphasized the distinction between the Rooker-Feldman

doctrine and preclusion principles in Lance v. Dennis, 126 S. Ct. 1198 (2006).  In Lance, the

Court, in evaluating whether the Rooker-Feldman may be invoked against a federal-court

plaintiff who was in privity with a party to a previous state court judgment, stated that "Rooker-

Feldman is not simply preclusion by another name."  See Lance, 126 S. Ct. at 1201-02.  The

Court further cautioned that a broad reading of the Rooker-Feldman doctrine would supplant the

Full Faith and Credit Statute, 28 U.S.C. § 1738.  See id. at 1202.

   In this case, the application of preclusion principles and the Entire Controversy Doctrine,

as discussed below, are more appropriate than dismissal for lack of subject matter jurisdiction

under the Rooker-Feldman doctrine.  Although Plaintiff in this matter is a "state-court loser," he

is not complaining of injuries *caused* by state court judgments rendered *before* the district court

proceedings commenced, as in the spirit of Rooker and Feldman.  Instead, Plaintiff filed *parallel*

actions in state and federal court.  In the instant federal lawsuit, Plaintiff asserts independent

claims against the Defendants, that preceded the relevant state court judgments, alleging that the Defendants engaged in wrongful conduct.  See Exxon Mobile, 544 U.S. at 293  ("If a federal plaintiff presents an independent claim, even one that denies a legal conclusion in a case to which the plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles."); Turner, 449 F.3d at 547-48 (finding that Rooker-Feldman doctrine was not applicable where plaintiff filed federal action after losing in state court alleging claims that defendants violated federal law, not claims of injury caused by the state court judgment).

The instant matter is similar a recent case before the Third Circuit, Turner v. Crawford Square Apartments, III, L.P., 449 F.3d 542 (3d Cir. 2006).  In Turner, the plaintiff filed a federal lawsuit alleging that defendants violated the Fair Housing Act ("FHA") after losing a state court lawsuit involving the same underlying facts, namely, the plaintiff's eviction from an apartment. Although the plaintiff in Turner did not file parallel actions, as we have in this case, the substance of the claims are similar to the instant case.  In Turner, the plaintiff raised, in federal court, "claims, grounded on the FHA, *not* caused by the state-court judgment but instead attributable to defendants' alleged FHA violations that preceded the state-court judgment."  See Turner, 449 F.3d at 547.  The court found that in such circumstances, preclusion law, and not the Rooker-Feldman doctrine, was applicable.  See id. at 548-50 (finding that "the continuing vitality of a federal action filed after entry of state-court judgment often depends on state preclusion law").  The Third Circuit applied the relevant preclusion law and held that the plaintiff's claims were barred by *res judicata*.  See id. at 548-51.

The Court accordingly applies the same analysis in this matter and therefore, holds that

24

the Rooker-Feldman doctrine does not deprive it of jurisdiction to hear this case.  Instead, the

Court will consider whether Plaintiff's claims are barred by preclusion principles.  See Turner,

449 F.3d at 547-48 (dismissing case on preclusion grounds as opposed to Rooker-Feldman

doctrine where plaintiff was not complaining of injuries caused by a state court judgment, but

instead, complaining of injuries caused by third parties which preceded state court judgment);

Heimbuch v. Platinum Financial Services, Corp., No. 06-44, 2006 WL 2191964, at *4-6 (W.D.

Pa. Aug. 1, 2006) (dismissing case on preclusion grounds as opposed to Rooker-Feldman

doctrine where plaintiff who lost in state court brought federal lawsuit asserting independent

claims that defendants engaged in fraud, as opposed to complaints of injury caused by the state

court judgment).

## C.     Full Faith and Credit, Preclusion Principles, and the Entire Controversy Doctrine

There are four legal doctrines that dictate the disposition of the instant motions for

summary judgment:  the Full Faith and Credit Statute, 28 U.S.C. § 1738; *collateral estoppel*; *res*

*judicata*; and the Entire Controversy Doctrine.   These doctrines all involve the "fundamental

feature of the relationship between state and federal courts" that "courts of each system must

respect the judgments of courts of the other system."  See Watkins v. Resorts Int'l Hotel &

Casino, Inc., 591 A.2d 592, 595 (N.J. 1991).  They also ensure that at some point, litigation over

a particular controversy must end, a principle which is essential to protecting the integrity,

economy, and finality of judgments.  See, e.g., Watkins, 591 A.2d at 597 ("At some point

litigation over a particular controversy should end."); Velasquez v. Franz, 589 A.2d 143, 147

(N.J. 1991) ("The rationale underlying res judicata recognizes that fairness to the defendant and

sound judicial administration require a definite end to litigation.").[13]

### 1.    The Full Faith and Credit Act

First, the Full Faith and Credit Act, 28 U.S.C. § 1738, provides that "judicial proceedings

. . . shall have the same full faith and credit in every court within the United States and its

Territories and Possessions as they have by law or usage in the courts of such State . . . from

which they are taken."  28 U.S.C. § 1738.  Thus, pursuant to this statute, federal courts must give

full faith and credit to state court judgments.  See Lance, 126 S. Ct. at 1202 (stating that pursuant

to the Full Faith and Credit Act, federal courts are required to give preclusive effect to state court

judgments).

### 2.    *Collateral Estoppel* or Issue Preclusion

*Collateral estoppel*, or issue preclusion, bars the re-litigation of matters that were actually

litigated and decided by another court.  See Watkins, 591 A.2d at 604; Long v. Lewis, 723 A.2d

---

[13] "[S]tate law rather than federal law determines whether a claim brought in federal court is precluded by a prior state court adjudication."  Parkview Assocs P'ship v. City of Lebanon, 225 F.3d 321, 329 (3d Cir. 2000).  Thus, with respect to the prior state court decisions, the Court applies New Jersey preclusion law.

In considering the preclusive effects of the jury's verdict in the First Federal Action, the Court applies federal preclusion law.  See Paramount Aviation Corp. v. Augusta, 178 F.3d 132, 135 (3d Cir. 1999) ("the preclusive effect of a judgment is determined by the preclusion law of the issuing court-in this case, a federal court").  Federal preclusion law, with respect to *collateral estoppel* and *res judicata*, is essentially the same as New Jersey preclusion law.  See, e.g., In re Cowden, 337 B.R. 512, 529-30 (W.D. Pa. 2006) (setting forth elements of *res judicata* and *collateral estoppel* under federal law); see also Delaware River Port Authority v. Fraternal Order of Police, 290 F.3d 567, 573 n.10 (3d Cir. 2002) (stating that the standard for *collateral estoppel* under federal common law is "almost identical" to the standard under New Jersey law); Hutchinson v. Delaware Savings Bank, 410 F. Supp. 2d 374, 378-79 (D.N.J. 2006) (" 'Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present . . . .' " (quotation omitted)).  However, the Entire Controversy Doctrine does not apply to bar claims in federal court based on a prior federal court judgment.  See Paramount Aviation, 178 F.3d at 145-46.

26

1238, 1241 (N.J. Super. Ct. App. Div. 1999).  Issue preclusion applies where (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated in the prior proceeding; (3) there was a final judgment on the merits; (4) the determination of the issue was essential to the judgment; and (5) the party against whom the bar is asserted was a party to or in privity with a party to the earlier proceeding.  See Hennessey v. Winslow Twp., 875 A.2d 240, 243-44 (N.J. 2005); see also Viking Comm., Inc. v. AT&T Corp., No. 05-1078, 2005 WL 2621919, at *3 (D.N.J. Oct. 14, 2005).

### 3.     *Res Judicata* or Claim Preclusion

*Res judicata*, or claim preclusion, bars the re-litigation of matters actually determined in an earlier action, as well as "all relevant matters that could have been so determined."  See Watkins, 591 A.2d at 599, 604; see also Cahn v. United States, 269 F. Supp. 2d 537, 544 (D.N.J. 2003) ("a judgment 'foreclos[es] litigation of a matter that has never been litigated, because of a determination that it should have been advanced in an earlier suit.' " (quotation omitted)).  To establish claim preclusion, a party must show that (1) the judgment in the prior action was valid, final, and on the merits; (2) the parties in the later action were identical to or in privity with those in the prior action; and (3) the claim in the later action arose out of the same transaction or occurrence as the claim in the earlier action.  See, e.g., Watkins, 591 A.2d at 599; see also Cahn, 269 F. Supp. 2d at 544.  The theory behind claim preclusion is that if a litigant seeks to remedy a single wrong under various theories, all such theories should be presented in the first action.  See Watkins, 591 A.2d at 599.[14]

---

[14]  The term *res judicata* is used broadly by courts to encompass both claim and issue preclusion and narrowly to refer only to claim preclusion.  See Venuto v. Witco Corp., 117 F.3d 754, 758 n.5 (3d Cir. 1997).  These distinctions are mere semantics and do not affect the legal

4.        **The Entire Controversy Doctrine**

New Jersey's Entire Controversy Doctrine seeks to ensure that all aspects of a legal dispute occur in one action before a single court.   The doctrine "requires the assertion of all claims arising from a single controversy in a single action at the risk of being precluded from asserting them in the future."  See In re Estate of Gabrellian, 859 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2004); see also N.J.R. 4:30A ("[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims . . .").  Thus, the doctrine bars claims brought in federal court "when there was a previous state-court action involving the same transaction."  See, e.g., Bennun v. Rutgers State University, 941 F.2d 154, 163 (3d Cir. 1991); see also Tilbury v. Aames Home Loan, No. 05-2033, 2005 WL 3477558, at *7 (D.N.J. Dec. 12, 2005) ("Federal courts in New Jersey have applied New Jersey's entire controversy doctrine to bar claims that were actually litigated or could have been litigated in previous state court actions.").

The claim preclusion aspect of the Entire Controversy Doctrine is essentially the same as the *res judicata* principles outlined above.  See, e.g., Long, 732 A.2d at 1242 ("The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name.").  Thus, the Entire Controversy Doctrine will preclude a claim where such arose out of the same transaction or series of transactions which underlie a previous state court dispute.  See Fornarotto v. Am. Waterworks Co., 144 F.3d 276, 279 (3d Cir. 1998); Heir v. Delaware River Port

---

issues presented in these motions.  For the purposes of this opinion, the Court uses the term *res judicata* narrowly to refer only to claim preclusion.

Authority, 218 F. Supp. 2d 627, 633 & n.6 (D.N.J. 2002).[15]

**D.    Analysis of Plaintiff's Claims**

Based on the foregoing, it is clear that Plaintiff's claims in the instant lawsuit are precluded by the application of *collateral estoppel*, *res judicata*, and the Entire Controversy Doctrine. Accordingly, the Court must give preclusive effect to the First Federal Action and full faith and credit to the Spring Creek Action and the Sussex Action.

**1.    Preclusive Effects of the First Federal Action**

First, with respect to the First Federal Action, as indicated above, on October 16, 2006, a jury determined that Plaintiff is not the sole owner of Metairie and Spring Creek; Svirsky and Meyers are controlling shareholders of Metairie and Spring Creek; and that it was Plaintiff, not Svirsky and Meyers, who breached fiduciary duties owed to the companies and interfered with Spring Creek's operations.

Plaintiff was obviously a party to this action. This judgment was also final, valid, and on the merits. See, e.g., Watkins, 591 A.2d at 599 (citing Restatement (Second) of Judgments § 19

---

[15]   The Third Circuit has held that New Jersey's Entire Controversy Doctrine does not "preclude the initiation of a second litigation before the first action has been concluded." Rycoline Products, Inc. v. C&W Unlimited, 109 F.3d 883, 889 (3d Cir. 1997). In Rycoline Products, the court held that the Entire Controversy Doctrine did not bar a second action which was filed while a previously-filed related action was still pending. See id. at 888-90. However, the Third Circuit did not reach the issue presented in this case, namely, whether the Entire Controversy Doctrine may bar such a second action once the previously-filed related action has concluded. See id. at 889 n.2.; Total Packaging Corp. v. Tenneco Packaging Corp., No. 01-4286, 2004 WL 758240, at *4 (D.N.J. Apr. 2, 2004). Plaintiff does not advance this argument and thus, provides no reason for the Court to conclude that the Entire Controversy Doctrine would not apply in this case. Further, at least one court in the District of New Jersey has held that the Entire Controversy Doctrine is applicable "[w]hen the first of two concurrent actions is reduced to judgment by a New Jersey Court." See Total Packaging Corp., 2004 WL 758240, at *4. Accordingly, the Court finds that the Entire Controversy Doctrine is applicable to the instant case.

("The prototype case [for preclusion purposes] continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues."); Mortgagelinq Corp. v. Commw. Land Title Ins. Co., 662 A.2d 536, 541 (N.J. 1995) (stating that in the context of *res judicata*, "[t]ypically, the merits of a claim are adjudicated following a full trial of the substantive issues").

Plaintiff's requests for declaratory relief in this case are thus precluded by the jury verdict in the First Federal Action.  Plaintiff asks the Court to declare that (1) he is the sole owner of Metairie and Spring Creek; (2) Svirsky and Meyers have no interest in these companies and thus, no authority to act on their behalf; and (3) any person dealing with Svirsky and Meyers acting on behalf of Metairie and Spring Creek did so at their peril.  These claims were actually litigated in the First Federal Action and were essential to the judgment issued.  Accordingly, Plaintiff's claims in this regard are barred by the doctrine of *collateral estoppel*.  To the extent that the issue of control over Metairie and Spring Creek pervades Plaintiff's other claims in this case, *collateral estoppel* also applies to bar reconsideration of that issue.

### 2.    Preclusive Effects of the Spring Creek Action

Second, the Court in the Spring Creek Action determined that Shinnihon was entitled to terminate its contract with Spring Creek as of June 30, 2003.  Accordingly, Spring Creek had no right of first refusal with respect to the Golf Course and no right to purchase the Remainder Land.  Judge MacKenzie dismissed Plaintiff's claims in the Spring Creek Action *with prejudice.*

Plaintiff is precluded from arguing that Spring Creek had such rights with respect to the Golf Course and the Remainder Land under its agreement with Shinnihon.  This identical issue was litigated before Judge MacKenzie, whose decision was a valid, final judgment on the merits.

See, e.g., Mortgagelinq, 662 A.2d at 541 ("a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial' " (quotation omitted)); Feinsold v. Noon, 617 A.2d 1234, 1234 (N.J. Super. Ct. App. Div. 1992) (stating that a dismissal with prejudice constitutes a final adjudication on the merits). The determination of the issue of Spring Creek's rights to the Remainder Land and Golf Course under its contract with Shinnihon was clearly essential to the judgment.

Plaintiff's claims that he cannot be bound by this judgment because he was not a party to the Spring Creek Action are unfounded. The Court is not binding Plaintiff to the judgment in the Spring Creek Action, it is binding Spring Creek to this judgment. Any claims Plaintiff purports to assert with respect to Spring Creek's rights under its agreement with Shinnihon belong to Spring Creek and were advanced by Spring Creek before Judge MacKenzie. Judge MacKenzie found, and the Appellate Division affirmed, that Plaintiff did not have an interest independent of Spring Creek's interest in enforcing its agreement with Shinnihon. Since Spring Creek was a party in the Spring Creek Action before Judge MacKenzie, it is perfectly appropriate to preclude Spring Creek from re-litigating this issue, whether its claims are being advanced by Plaintiff or by Svirsky and Meyers.

Accordingly, the Court finds that *collateral estoppel* precludes Plaintiff from re-litigating his claims that Spring Creek has contractual rights with respect to the Golf Course and Remainder Land.

### 3.   Preclusive Effects of the Sussex Action

Third, and most relevant to the disposition of the instant motions, is Judge Farber's March 17, 2006 decision in the Sussex Action dismissing Plaintiff's claims against the Board,

31

WSG, Colonial Bank, and Shinnihon.  The parties in the Sussex Action were identical to the parties in this action.  The factual basis for the Sussex Action is virtually identical to the underlying facts in this lawsuit.  Both the claims in the Sussex Action and in the instant action deal with Plaintiff's efforts to acquire property at the Legends Resort and the subsequent fall-out from his dealings with Svirsky and Meyers.  Many of the claims in this instant case are mirror-images of the claims brought in the Sussex Action.  Plaintiff essentially admits such in the Affirmation of his attorney, Richard D. Gaines, Esq., which is attached to his opposition brief: "all the claims involving all the parties to the [Sussex Action before Judge Farber] as well as other parties not parties to the [Sussex Action] were either in the First Federal Action of [sic] this action."  Gaines Affirmation (May 5, 2006) at ¶ 28.

Judge Farber's decision, dismissing Plaintiff's claims *with prejudice*, was valid, final, and on the merits.  See, e.g., Mortgagelinq, 662 A.2d at 541 ("a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial' " (quotation omitted)); Feinsold v. Noon, 617 A.2d 1234, 1234 (N.J. Super. Ct. App. Div. 1992) (stating that a dismissal with prejudice constitutes a final adjudication on the merits).  Although he discussed some procedural grounds for dismissing Plaintiff's claims, Judge Farber reached the substantive merits of each of Plaintiff's claims and found them to be unfounded as a matter of law.[16]

Many of the claims currently before the Court, as explained below, were actually litigated before Judge Farber and thus, are barred by the doctrine of *collateral estoppel*.  To the extent that

---

[16] Thus, Plaintiff's contentions that Judge Farber dismissed some of his claims solely on the Entire Controversy Doctrine is unfounded.

these claims were not actually litigated before Judge Farber, the claims in the instant lawsuit are barred by *res judicata* and the Entire Controversy Doctrine because they arose out of the same transactions and occurrences as those before Judge Farber.

        **a.**      **The Board**

First, Plaintiff is precluded from asserting his claims against the Board because he brought the exact same claims against the Board in the Sussex Action.  Judge Farber explicitly found that Plaintiff could not establish that the Board violated 42 U.S.C. § 1983 because there was no underlying constitutional violation.[17]  He further determined that Plaintiff failed to provide any evidence to support his claims under the New Jersey Open Public Meetings Act, N.J.S.A. §§ 10:4-6 et seq.,[18] and the New Jersey Municipal Land Use Law, N.J.S.A. §§ 40:55D-1 et seq.[19]  These are the exact same claims Plaintiff brings in this lawsuit.  Thus, since these claims were actually litigated before Judge Farber, *collateral estoppel* bars Plaintiff from pursuing them in this case.

Plaintiff's claims for injunctive relief against the Board are also barred by preclusion principles and, in any event, are rendered moot by the Board's denial of approval of the modified

---

[17]  As indicated above, see supra note 11, it appears that Judge Farber also found that Plaintiff's section 1983 claim was time-barred.

[18]  The New Jersey Open Public Meetings Act was enacted to ensure that the public has access to proceedings conducted by public bodies.  See N.J.S.A. § 10:4-7.  The provisions of this statute generally require that public bodies give notice of their meetings, ensure that meetings are open to the public, and make minutes of meetings available to the public.  See N.J.S.A. §§ 10:4-6 et seq.

[19]  The New Jersey Municipal Land Use Law was enacted for a variety of purposes, but essentially ensures that lands within New Jersey are being appropriately used and developed by municipalities.  See N.J.S.A. §§ 40:55D-2.  The statute sets for the procedures for a municipality's consideration of various land use matters.  See N.J.S.A. §§ 40:55D-1 et seq.

site plans on August 15, 2005.   Plaintiff asks the Court to require the Board to extend the

preliminary site approvals, submitted prior to Svirsky's and Meyers's involvement, pending a

final determination on Plaintiff's claims. Plaintiff also asks the Court to order the Board to

permit submission of final zoning approvals based on such plans.  Plaintiff has already sought

and been denied such injunctive relief by two judges.  <u>See</u> Opinion (SSX-040-05) (Feb. 17,

2005) at pp. 1-2 (denying Plaintiff's request to require the Board to extend the preliminary site

approvals and prohibit the Board from considering the modified plans as submitted by Spring

Creek and Shinnihon); Order (02-CV-376) (Feb. 17, 2005) at pp. 2-3 (denying Plaintiff's

application to enjoin Svirsky, Meyers, and Spring Creek from seeking a modification of the

preliminary site approvals).  Thus, Plaintiff's claim for injunctive relief against the Board is

precluded by *collateral estoppel*.

> **b.**     **Colonial Bank**

Plaintiff also brought the same claims against Colonial Bank in the Sussex Action.

Plaintiff claimed that Colonial Bank committed fraud and interfered with his control and

contractual rights in both this action and the Sussex Action.  Judge Farber granted summary

judgment in favor of Colonial Bank and dismissed Plaintiff's claims because Plaintiff failed to

provide any evidence that Colonial Bank new of the allegedly improper actions of Svirsky and

Meyers.  The court further stated that Plaintiff could not establish any of the traditional elements

of fraud.  Thus, Plaintiff's claims in this case are barred by *collateral estoppel*.

> **c.**     **WSG**

Furthermore, Plaintiff's claims against WSG in the instant action are virtually identical to

those in the Sussex Action, which Judge Farber dismissed.  Plaintiff claims that WSG engaged in

fraud by assisting Svirsky and Meyers in their unlawful conduct and otherwise interfering with

Plaintiff's rights.  Judge Farber found that WSG could not have interfered with Plaintiff's

contractual rights because no underlying contract existed.  The court also determined that WSG

did not have an agreement with Svirsky and Meyers to purchase Metairie's and Spring Creek's

assets, and that Plaintiff failed to produce any evidence that WSG was involved in zoning or

planning activities.   In addition, Judge Farber found that WSG did not interfere with Plaintiff's

rights because Plaintiff did not show that WSG had the requisite malice to do so.  Accordingly,

Plaintiff's claims against WSG are barred by *collateral estoppel*.

   **d.   Shinnihon**

   Finally, Plaintiff's claims against Shinnihon in the instant case are nearly identical to

those asserted in the Sussex Action and thus, are precluded.  Plaintiff claimed in the Sussex

Action that Shinnihon engaged in fraud and improperly interfered with his control and

contractual rights.  In this instant case, Plaintiff sued Shinnihon for breach of contract and for

tortious interference with his control and contractual rights.   Judge Farber determined that

Shinnihon did not have the requisite specific intent to interfere with Plaintiff's rights.[20]  In

addition, it is undisputed that Plaintiff does not have a contract with Shinnihon.  Plaintiff admits

this fact in his complaint.  See Complaint (Jan. 30, 2006) at ¶¶ 61-63 (indicating that Spring

---

[20]  Contrary to Plaintiff's assertions, Judge Farber did not rest his decision on the
undersigned's dismissal of the claims against Shinnihon in the First Federal Action or on Judge
Hedges's refusal to allow Plaintiff to amend his complaint to add claims against Shinnihon.
Further, Judge Farber disposed of Plaintiff's claims that Shinnihon interfered with Plaintiff's
control rights by finding that Plaintiff failed to show that Shinnihon had any intent to do so.

Creek, not Plaintiff, entered into an agreement with Shinnihon).[21]  Any contractual rights
Plaintiff is attempting to assert on behalf of Spring Creek, with respect to its agreement with
Shinnihon, are precluded by Judge MacKenzie's decision in the Spring Creek Action.

Plaintiff's requests for injunctive relief with respect to Shinnihon are also either
precluded by the decisions of Judge Farber, Judge MacKenzie, and the jury in the First Federal
Action, or rendered moot by the Board's denial of Spring Creek and Shinnihon's proposed
modified site plans on October 5, 2005.  Plaintiff's claim that Shinnihon should be enjoined from
selling or transferring its interests in the Golf Course and the Remainder Land is precluded
because Judge MacKenzie has already determined that neither Spring Creek, nor Plaintiff, have
any rights with respect to the Golf Course or the Remainder Land.  His request that the Court
require Shinnihon to provide Plaintiff with copies of any offers to purchase the Golf Course that
would trigger Spring Creek's right of first refusal and order Shinnihon to convey the Remainder
Land and Golf Course to Spring Creek or Brazos are also precluded on this basis.   Also,
Plaintiff's claim that Shinnihon should be enjoined from dealing with Svirsky and Meyers fails
because the jury in the First Federal Action recently found that it is Svirsky and Meyers, not
Plaintiff, who have the authority to act on behalf of Spring Creek.

---

[21]   Plaintiff states in his opposition brief that "Shinnihon also erroneously claims that
Keith has no contract with respect to which it can assert a claim for tortious interference."
Plaintiff's Brief (May 6, 2006) at p. 29.  In support of this statement, Plaintiff references Judge
Hedges's April 15, 2003 decision finding that Plaintiff has pled a claim for interference with his
contractual relations based on his purported contractual rights as a Metairie and Spring Creek
shareholder.  This undersigned affirmed this decision on June 1, 2005.  Contrary to Plaintiff's
assertion, the Court did not find that Plaintiff had a *contract* with Shinnihon.  Instead, it found
that Plaintiff pled that he had contractual rights dependent on his shareholder status.

###### e.     Itoyama, Fujinami, Kanko, Kogyo, Mulvihill, and Great Gorge

Further, it appears that Defendants Itoyama, Fujinami, Kanko, Kogyo, Mulvihill, and Great Gorge were included in the Sussex Action as "John Does" and "Richard Roes."  Plaintiff's Third Amended Complaint specifically brings claims against "Shinnihon, its Principals and Officers" and states that these fictional groups include "principals and officers of Shinnihon." See Third Amended Complaint (Dec. 12, 2005) at ¶¶ 141-46.  Further, Plaintiff specifies that these groups include individuals and entities who interfered with Plaintiff's rights in Metairie and Spring Creek and purported right to purchase the Remainder Land and Golf Course.  See id. at ¶¶ 8, 141-46.  Thus, these groups presumably include Itoyama, Fujinami, Kanko, Kogyo, Mulvihill and Great Gorge.  In his order, Judge Farber explicitly dismissed all claims against all defendants with prejudice.

To the extent that Plaintiff's claims against these defendants are not precluded by Judge Farber's decision, they are precluded by the other previous adjudications because such claims are premised on Plaintiff being the sole owner of Metairie and Spring Creek and on Spring Creek having contractual rights with respect to the Golf Course and Remainder Land.  In addition, Plaintiff provides no evidence, besides his bare allegations of impropriety, to support his claims against these defendants, and thus, such claims are dismissed.

Further, Plaintiff's claim for an injunction prohibiting Mulvihill and Great Gorge from exercising authority over the Golf Course and Remainder Land or otherwise transferring its interest in such properties until Plaintiff's rights are determined fails because, as discussed above, Judge MacKenzie already determined that neither Spring Creek nor Plaintiff has any contractual rights to the Golf Course or the Remainder Land.

### 4. Plaintiff's Arguments in Opposition to Summary Judgment

Plaintiff's arguments in opposition to summary judgment are rejected.  Plaintiff's claims that Judge Farber's and Judge MacKenzie's rulings were not final, valid, and on the merits fails for the reasons discussed above.  Further, although Plaintiff argues in his opposition brief that the decisions of Judge Farber and Judge MacKenzie were not "final," he admits in his improperly-filed sur-reply brief that these are final decisions for preclusion purposes.  See Plaintiff's Brief (May 22, 2006) at p. 1.  Plaintiff's claim that these previous state court adjudications were not valid because Svirsky and Meyers were not authorized to act on behalf of Spring Creek is also rejected because this argument is invalidated by the jury's recent finding that Plaintiff does not solely own Spring Creek.  Furthermore, Plaintiff's repeated assertions that Judge MacKenzie's decision was in error are not properly before this Court.  Such matters must be, and apparently were, presented to the Appellate Division.

Plaintiff also argues that unpublished decisions are not precedential.  It appears that by making this argument, Plaintiff is claiming that this Court may not look to the decisions of Judge Farber and Judge MacKenzie in dismissing this action.  This argument makes no sense.  If this Court were to accept Plaintiff's position, the entire concepts of *collateral estoppel*, *res judicata*, and the Entire Controversy Doctrine would be turned on their heads.  In fact, New Jersey Rule of Court 1:36-3 explicitly allows for the citation to unpublished opinions for purposes of *res judicata*, *collateral estoppel*, and the Entire Controversy Doctrine.  See N.J.R. 1:36-3.

Despite Plaintiff's arguments in opposition to the instant motions, Plaintiff admitted during the course of these proceedings that Judge Farber's decision in the state court case would justify the dismissal of Plaintiff's claims against the defendants in this case.  See Plaintiff's

Letter (Mar. 21, 2006) at p. 1 ("Based on my recollection of [Judge Farber's] decision . . . unless Judge Farber modifies his order, I do not believe the claims against WSG Development, Colonial Bank, Shinnihon, and the Vernon Township Zoning Board of Adjustment can proceed in this case."); Plaintiff's Brief (May 6, 2006) at p. 35 ("Keith's counsel informed [Judge Hedges] that . . . depending on how the motions for reconsideration was resolved [before Judge Farber] some of the claims might be precluded."); Gaines Affirmation (May 5, 2006) at ¶ 31 (same). In his March 21, 2006 letter, Plaintiff's attorney asks the Court to modify the briefing schedule for dispositive motions set by the Court so he can file a motion before Judge Farber asking him to reconsider his decision. See Letter (March 21, 2006) at p. 1. Plaintiff's attorney states that if Judge Farber does not modify his decision, "I would expect that no motions would be necessary." See id.

Therefore, for the foregoing reasons, the Court grants summary judgment in favor of Defendants on Plaintiff's claims.

## E.   Defendants' Request for Injunctive Relief

In addition to seeking summary judgment, the Shinnihon Defendants, Mulvihill Defendants, Colonial Bank and WSG seek an injunction prohibiting Plaintiff from filing any more lawsuits regarding these incidents without leave of Court. The Court recognizes that it has the discretion to impose such an injunction to protect itself from groundless, vexatious, and frivolous litigation. See, e.g., Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir. 1990) (stating that pursuant to 28 U.S.C. § 1651, "district courts in this circuit may issue an injunction to require litigants to obtain the approval of the court before filing further complaints"); Tilbury, 2005 WL 3477558, at *10-11 ("The Court has the inherent power to protect itself from Plaintiffs'

oppressive and frivolous litigation."). However, such an injunction is an extraordinary remedy. See, e.g., Abdul-Akbar, 901 F.2d at 332; see also Sakhrani v. Washington Mutual Bank, F.A., No. 06-1760, 2006 WL 2040256, at *4 (D.N.J. July 20, 2006) (noting that the imposition of an injunction requiring a party to file a motion with the court before he re-files other motions or lawsuits is "very extraordinary relief" and denying such request).

The Court declines to impose the injunction that these defendants request. The Court does not condone Plaintiff's filing of parallel actions, and subsequent maintenance of this action after Judge MacKenzie held that Spring Creek had no enforceable contract with Shinnihon, Judge Farber dismissed Plaintiff's nearly identical claims in the Sussex Action on the merits and with prejudice, and the jury in the First Federal Action found in favor of Svirsky and Meyers, and against Plaintiff, on all counts. However, there is nothing per se improper about a litigant filing parallel state and federal actions where such courts have concurrent jurisdiction. Steinberg v. Nationwide Mutual Ins. Co., 418 F. Supp. 2d 215, 223, 226 (E.D.N.Y. Mar. 7, 2006) (declining to impose sanctions where plaintiff filed parallel state and federal actions because there is nothing inappropriate about filing a federal lawsuit while a state action is pending). Plaintiff also represented in his improperly-filed sur-reply brief that he would dismiss the claims against the Board, Colonial Bank, and WSG without prejudice. Further, Plaintiff was not the only individual or entity filing lawsuits related to the incidents in question.

It is the Court's hope that given the jury's recent verdict against Plaintiff in the First Federal Action, that Plaintiff finally realizes that he has had his day in court. Thus, while the Court will not bar Plaintiff from filing further actions as Defendants request, the Court cautions Plaintiff against doing so. Should Plaintiff file another lawsuit, in any court, raising claims

resulting out of his struggle for control of Metairie and Spring Creek, attempts to acquire the various properties at the Legends Resort, or any other matter that relates to the subject of the previously-filed and adjudicated lawsuits, Plaintiff will undoubtedly expose himself to such an injunction.

**F.     Defendants' Motion for Sanctions**

Defendants contend that the Court should impose monetary and non-monetary sanctions[22] upon Plaintiff and his attorney, Richard Gaines, Esq., pursuant to Rule 11 and the Court's inherent authority to sanction for maintaining duplicitous and vexations litigation.  Defendants also ask for costs and attorneys' fees pursuant to 28 U.S.C. § 1927.   Defendants claims that such sanctions are warranted because Plaintiff's filing and subsequent maintenance of this lawsuit, after Judge Farber dismissed virtually identical claims, was improper, vexatious, and frivolous.

Rule 11 provides that a court may impose sanctions upon an attorney or party for filing documents for an improper purpose, making frivolous arguments, and making allegations that lack evidentiary support.  See Fed. R. Civ. P. 11(b)-(c).  In deciding whether to impose sanctions, the Court looks objectively to whether the imposition of sanctions would be "reasonable under the circumstances."  See, e.g., Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995); Balthazar v. Atlantic City Medical Center, 279 F. Supp. 2d 574, 593 (D.N.J. 2003).  Sanctions are only awarded in exceptional circumstances.  See Sakhrani, 2006 WL 2040256, at * 3 (indicating that Rule 11 sanctions are only appropriate in the "exceptional circumstances" where a claim or motion is patently without merit or frivolous); In re Armstrong, 2001 WL 799705, at *3 (E.D. Pa.

---

[22]  WSG suggests that an appropriate non-monetary sanction would be to require Plaintiff's counsel to complete courses in civil procedure and business torts.

July 10, 2001) (stating that courts may impose Rule 11 sanctions in "extraordinary circumstances").

Section 1927 of Title 28 of the United States Code provides that the Court may require an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the "excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The Court declines to impose such sanctions or costs upon the Plaintiff. As indicated above, the Court does not condone the manner in which the Plaintiff and his attorney, Mr. Gaines, litigated this case. However, Rule 11 sanctions are a drastic remedy, which, the Court notes, were already imposed on Plaintiff in the First Federal Action for filing notices of *lis pendens* in violation of a court order. <u>See</u> Letter Opinion (02-CV-376) (Jan. 11, 2006) at pp. 4-5 (imposing Rule 11 sanctions upon Plaintiff); Letter Opinion (02-CV-376) (Sept. 18, 2006) at pp. 5-6 (affirming Judge Hedges's imposition of sanctions against Plaintiff).

The Court again cautions Plaintiff against future filings with respect to the issues underlying this matter and the other previous lawsuits. Should Plaintiff file another such lawsuit, he will not only expose himself to a bar order as discussed above, but will also undoubtedly expose himself to substantial sanctions.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court (1) grants Defendants' respective motions for summary judgment; (2) denies Defendants' requests for an injunction prohibiting Plaintiff from filing further lawsuits relating to the subject matter of this dispute; and (3) denies Defendants' respective motions for sanctions. An appropriate order accompanies this opinion.

Date:   October 26, 2006                                /s/ Jose L. Linares
                                                        United States District Judge